```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
NATIONAL CASUALTY COMPANY,              :
                                        :
                    Petitioner,         :    15cv9440 (DLC)
                                        :
              -v-                       :    OPINION AND ORDER
                                        :
RESOLUTE REINSURANCE COMPANY,           :
                                        :
                    Respondent.         :
----------------------------------------X
```

APPEARANCES:

For the petitioner:
Keith Dotseth
Daniel C. Adams
Larson King, LLP
30 East Seventh Street, Suite 2800
Saint Paul, MN 55101

For the respondent:
Kevin J O'Connor
Hermes, Netburn, O'Connor & Spearin, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110

Jennifer Louise Stineback
Rivkin Radler LLP (UNIONDALE)
926 RXR Plaza
Uniondale, NY 11556

DENISE COTE, District Judge:

This dispute arises from National Casualty Company's ("NCC") petition to confirm an arbitration award it won against Resolute Reinsurance Company ("Resolute"). For the reasons that follow, the petition is granted.

**Background**

NCC and Resolute are parties to a reinsurance agreement that provides for binding arbitration in the event of a dispute. The arbitration clause of the reinsurance agreement provides in relevant part that the "arbitrators and umpire are relieved from all judicial formalities and may abstain from following the strict rules of law and they shall make their written award with a view to effecting the purpose of" the agreement, "rather than in accordance with the literal interpretation of the language." The parties also agreed that arbitrations under the agreement "shall be governed by the legal interpretations, customs and usages prevalent in the insurance industry."  Finally, the arbitration agreement states that "[t]he written decision of the [arbitration panel] shall be final and binding upon the parties under this certificate."

The arbitration at issue here arose out of a dispute over a reinsurance billing submitted to Resolute on March 19, 2012. NCC billed Resolute for $1.92 million in losses and $477,439.95 in declaratory judgment expenses associated with a settlement agreement in coverage litigation between NCC and Honeywell International.  Resolute did not agree with NCC's allocation of the underlying settlement expenses and disputed the amount billed.  In July 2013, Resolute paid $1.12 million to NCC.

The parties first sought federal court intervention in this dispute on April 23, 2014, when NCC filed a petition for the appointment of an arbitrator under § 5 of the FAA.  That petition was assigned to this Court.  Resolute filed its opposition to NCC's petition and also filed a cross petition to compel arbitration under § 4 of the FAA.  The case was dismissed without prejudice on June 13 by the parties' stipulation.

On August 11, 2015, the arbitration panel issued its order and final award.  The arbitration panel found that NCC's allocation of the settlement expenses was objectively reasonable and ordered Resolute to pay the remaining billed loss and declaratory judgment expenses in the amount of $1,277,439.95, as well as prejudgment interest.  In September 2015, Resolute paid the award in full.

On November 27, 2015, NCC filed a petition for confirmation of the August 11 award.[1]  On December 7, the Court accepted this case as related to the 2014 litigation surrounding the appointment of an arbitrator.  The petition became fully submitted on February 12.

---

[1] NCC originally filed the petition and supporting papers under seal.  After the Court ordered the parties to indicate which passages in the petition and underlying documents should be placed under seal, and they failed to do so, the Court ordered that all of the filings must be made part of the public record.

Resolute has opposed NCC's petition on three grounds: (1) there is no subject matter jurisdiction because the amount in controversy requirement is not satisfied; (2) there is no Article III case or controversy; and (3) the arbitration agreement does not include consent to confirmation of an arbitration award as required by § 9 of the Federal Arbitration Act ("FAA").

## Discussion

Section 9 of the FAA provides in relevant part that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order.

9 U.S.C. § 9.  If the parties do not specify the court that may confirm an arbitration award, "such application [for confirmation] may be made to the United States court in and for the district within which such award is made."  Id.  Venue is proper in the Southern District of New York because the parties did not select a forum for proceedings under § 9 and the arbitration took place in New York City.

    I.    **Diversity Jurisdiction**

"The FAA does not independently confer subject matter jurisdiction on the federal courts."  Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d

Cir. 2012) (citation omitted).  Thus, "[t]here must be an independent basis of jurisdiction before a district court may entertain petitions to confirm or vacate an award under the FAA."  Id. (citation omitted).  NCC alleges in its petition that there is diversity jurisdiction under 28 U.S.C. § 1332, which requires diversity of citizenship and an amount in controversy of $75,000.

The parties disagree about whether the amount in controversy requirement has been satisfied here.[2]  Resolute paid the arbitration award in full before NCC filed the petition to confirm that award.  The Second Circuit has not set forth a rule governing how to calculate the amount in controversy in an arbitration confirmation proceeding where the award has already been paid.  It has, however, held that "prior compliance is not a ground for refusal of confirmation" of an arbitration award.  Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007).  This is so because confirmation is "a summary proceeding in nature, which is not intended to involve complex factual determinations, other than the determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."  Id.  Thus, a "district court confirming an arbitration award does little more

---

[2] The parties agree that they are of diverse citizenship.  NCC is incorporated in Wisconsin and has its principal place of business in Arizona.  Resolute is incorporated in Delaware; its principal place of business is neither Wisconsin nor Arizona.

than give the award the force of a court order." Id.  Section 9 of the FAA is clear that a district court must confirm an arbitration award where the jurisdictional and statutory requirements are met.  As a general matter, therefore, the district court "is not required to consider the subsequent question of compliance."  Zeiler, 500 F.3d at 169.

Other circuits have identified several possible methods for calculating the amount in controversy in an arbitration confirmation proceeding.  The "demand approach" uses the amount that was demanded in the underlying proceeding to determine the amount in controversy in subsequent confirmation litigation.  Karsner v. Lothian, 532 F.3d 876, 883 (D.C. Cir. 2008).  That approach has been adopted in the First, D.C., and Ninth Circuits.  See id.; Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 663-64 (9th Cir. 2005) (using the demand approach to uphold the district court's jurisdiction to confirm a $0 arbitration award); Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328-29 (1st Cir. 2000) (finding diversity jurisdiction existed where the petitioner sought vacatur of a $0 arbitration award and a new arbitration hearing at which he would demand $2,000,000).  The demand approach recognizes, as the Second Circuit has, that arbitration confirmation proceedings are "quasi-appellate" in nature.  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 136 (2d Cir. 2011).  That is, if in a

civil case a federal plaintiff sought more than $75,000 in his complaint, but a jury awarded only $30,000, the federal Court of Appeals would not be divested of jurisdiction over the defendant's appeal of that verdict.  Karsner, 532 F.3d at 884.  In essence, the demand approach "permits the district court to exercise jurisdiction coextensive with the diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated."  Id. (citation omitted); Theis Research, 500 F.3d at 663-64.  This serves the federal policy of promoting arbitration and "recognizes the close connection between arbitration and subsequent enforcement proceedings."  Karsner, 532 F.3d at 883 (citation omitted). Finally, the demand approach allows a defendant in the arbitration proceeding to seek confirmation of an arbitration award of $0, which § 9 explicitly allows by stating that "any party" may seek confirmation of a final arbitration award in federal court.  Presumably, § 9 allows a prevailing defendant in an arbitration proceeding to seek confirmation of the arbitrator's decision in his favor.  See Theis Research, 500 F.3d at 664.  Thus, the appropriate way to measure the amount in controversy during a § 9 confirmation proceeding is by using the amount demanded in the underlying arbitration.

Using the "demand approach," diversity jurisdiction exists here.  The amount demanded during the arbitration was

7

approximately $1.3 million, which indisputably exceeds $75,000.[3] The fact that Resolute has already complied with the award does not divest the Court of subject matter jurisdiction.

**II.  Article III Case or Controversy**

Article III § 2 provides that the judicial power is limited to adjudicating cases or controversies.  <u>Campbell-Ewald Co. v. Gomez</u>, 136 S. Ct. 663, 669 (2016), <u>as revised</u> (Feb. 9, 2016).  This requirement "demand[s] that an actual controversy be extant at all stages of review, not merely at the time the complaint is filed."  <u>Id.</u> (citation omitted).  "A case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." <u>Id.</u> (citation omitted).[4]  Thus, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." <u>Id.</u> (citation omitted).  In other words, "the case is moot if the dispute is no longer embedded in <u>any</u>

---

[3] NCC also contends that other aspects of the arbitration panel's ruling have value to it that would satisfy the amount in controversy.  For example, the findings that NCC's allocation method in this case was reasonable and that the contractual terms "investigation and settlement" allow NCC to recover declaratory judgment expenses are valuable determinations that are subject to confirmation.

[4] Resolute does not specify which of the many Article III doctrines concerning the existence of a case or controversy should govern the outcome here.  Resolute's principal argument is that the award has been paid and therefore nothing remains in dispute.  Thus, it appears that its primary concern is that this petition was mooted by its compliance with the award.

actual controversy about the plaintiffs' particular legal rights." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013) (citation omitted) (emphasis added); see Keepers, Inc. v. City of Milford, 807 F.3d 24, 44 (2d Cir. 2015) ("A dispute that is live when suit is filed remains so only for as long as the parties continue to have a concrete stake in the outcome." (citation omitted)).

The proceedings here satisfy Article III.  Because a party to an arbitration is entitled to confirmation of an award, until it receives that confirmation an ongoing case and controversy exists.  Indeed, § 9 does not provide that only disputed arbitration awards may be confirmed.  It broadly allows any party to petition for confirmation and, where the requirements are met, makes such confirmation mandatory.  Cf. Camreta v. Greene, 131 S. Ct. 2020, 2029 (2011) (discussing the circumstances in which a prevailing party has standing to appeal a judgment in its favor).  While this statutory language cannot override Article III's requirements, it does show that parties retain an undisputed right to § 9 confirmation whatever the nature of an award and the parties' degree of compliance with it.

Resolute's argument to the contrary is unpersuasive. Resolute contends that a court order confirming the arbitration award would not have any legal purpose because the parties agree

9

that Resolute complied with the award in full.  This argument misunderstands, however, the quasi-appellate nature of the proceeding and the parties' independent right to such confirmation.

### III. Consent to Confirmation Under § 9

Section 9 of the FAA provides that, if the parties "in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," then "any party" may petition for the award to be confirmed.  If the statutory prerequisites are satisfied, then "the court must grant such an order."[5]  Id. (emphasis added); Scandinavian Reinsurance Co., 668 F.3d at 78 (confirmation is mandatory).  One purpose of this provision is to "ensure that the parties have affirmatively agreed to the application of the federal substantive law contemplated by the [FAA]."  Phoenix Aktiengesellschaft v. Ecoplas, Inc., 391 F.3d 433, 436 (2d Cir. 2004) (citing I/S Stavborg v. Nat'l Metal Converters, Inc., 500 F.2d 424, 426 (2d Cir. 1974)).  Consent to confirmation may be explicit or it may be implied from the language of the arbitration agreement, the parties' conduct, or both.  I/S Stavborg, 500 F.2d at 426; Phoenix Aktiengesellschaft, 391 F.3d

---

[5] The contract containing the arbitration agreement must also affect interstate commerce to be subject to confirmation under the FAA.  9 U.S.C. § 1.  Resolute does not dispute that the interstate commerce requirement has been met.

10

at 437 n.2 ("[O]ur cases have not required that consent be explicit in order to satisfy § 9."). See Idea Nuova, Inc. v. GM Licensing Grp., Inc., 617 F.3d 177, 180-81 (2d Cir. 2010) (discussing the several ways that arbitration agreements and parties' conduct can imply consent to federal court confirmation). If the arbitration agreement "provided that the arbitrator's award was to be final," that is a factor that strongly indicates the parties' consent to § 9 confirmation. Kallen v. Dist. 1199, Nat. Union of Hosp. & Health Care Emp., RWDSU, AFL-CIO, 574 F.2d 723, 725 (2d Cir. 1978) (citation omitted). This is true because a party "can hardly avow that an award will be final, conclusive and binding upon it without implicitly agreeing that federal court intervention may be sought to compel compliance." Id. at 726.

The parties' arbitration agreement implies consent to confirmation under § 9.[6] The agreement provides that the "written decision of the [arbitration panel] shall be final and

---

[6] The Second Circuit has never had occasion to consider whether the "final and binding" language alone is sufficient to imply consent under § 9. See I/S Stavborg, 500 F.2d at 426 n.1; Phoenix Aktiengesellschaft, 391 F.3d at 437 n.2. All of the cases in which the Second Circuit found implied consent involved both language agreeing that an award is "final and binding" and either the application of federal substantive law to the dispute or some other conduct evincing consent to the application of the FAA. The cases do make it clear, however, that the "final and binding" language weighs heavily in favor of finding that the parties consented to confirmation under § 9.

binding upon the parties under this certificate." The parties' agreement that the award shall be "final and binding" powerfully indicates that they consented to federal court confirmation of an arbitration award. Indeed, if Resolute had not paid the award, a judgment from a federal (or state) court would be the only way to ensure its compliance.

Moreover, the parties' conduct during the 2014 litigation before this Court confirms that they agreed to the application of the FAA. In 2014, NCC filed a petition to appoint an arbitrator under § 5 of the FAA and Resolute filed a cross-petition to compel arbitration under § 4. Although the parties dismissed the 2014 matter by stipulation, both of them participated fully in federal court proceedings and attempted to benefit from provisions in the FAA in conducting the underlying arbitration.

Resolute's arguments to the contrary are unavailing. Resolute primarily argues that the cases cited above require both the "final and binding" language as well as other conduct in order to find implied consent to confirmation. Resolute claims that it has not done anything to show it consents to the application of the FAA. This contention is belied by the filing of Resolute's petition to compel arbitration in 2014, however. Resolute's attempts to distinguish the cases cited above are therefore not persuasive. The fact that Second Circuit

12

precedent discussing implied confirmation rested on slightly different fact patterns does not affect the analysis here, where the arbitration agreement and the parties' conduct fit squarely within the Second Circuit's articulated tests for implied consent under § 9.

Resolute's final argument is that the language in the arbitration agreement specifically provides that the arbitrator can "abstain from following the strict rules of law" and the arbitrations are "governed by the legal interpretations, customs and usages prevalent in the insurance industry."  Resolute appears to argue that these provisions evince an affirmative intent that federal arbitration law should not apply.  While the parties agreed that federal substantive law did not strictly apply to the adjudication of their disputes during an arbitration, that fact does not suggest that they withheld consent to federal court confirmation of an arbitration award.  As discussed above, they also agreed that the arbitrator's award would be final and binding.  Enforcement of that final award may only be achieved through use of court processes.

## **Conclusion**

NCC's petition to confirm the August 11, 2015 arbitration award is granted. The Clerk of Court shall enter judgment for NCC and close the case.

Dated:   New York, New York
         March 24, 2016

```
                         _____
                              DENISE COTE
                         United States District Judge
```